IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-00470-KAS

J.E.D.[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

    Defendant.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

    This matter is before the Court on the **Social Security Administrative Record** [#9], filed April 19, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for supplemental security income pursuant to Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#13] (the "Brief"), Defendant filed a Response [#14] in opposition, and Plaintiff filed a Reply [#15]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#12]; *Reassignment* [#16]; *Order of Reference* [#17].

## I. Background

On July 8, 2021, Plaintiff filed an application for disability insurance benefits under Title II and a Title XVI application for supplemental security income. Tr. 18.[3] In both applications, he alleged disability beginning February 21, 2018, but subsequently amended the onset date to December 11, 2020. Tr. 47.[4]

Plaintiff's claims were initially denied on February 4, 2022, and again on reconsideration on March 17, 2022. Tr. 18. On November 15, 2022, an Administrative Law Judge (the "ALJ") issued an unfavorable decision. Tr. 15-34. On January 9, 2023, the Appeals Council denied review. Tr. 1.

The ALJ first determined that Plaintiff meets the insured status requirements of the Act through June 30, 2025, and that he has not engaged in substantial gainful activity ("SGA") since December 8, 2020, the alleged onset date.[5] Tr. 20-21. The ALJ then found that Plaintiff suffers from five severe impairments: (1) spondylosis of the lumbar spine; (2) osteoarthritis of the bilateral knees; (3) osteoarthritis of the bilateral shoulders; (4) a chronic respiratory disorder (variably called chronic obstructive pulmonary disease ("COPD"), emphysema, or chronic obstructive lung disease); and (5) obesity. Tr. 21.

---

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 9 through 9-13, by the sequential transcript numbers instead of the separate docket numbers. Also, citations to a brief's page numbers refer to the numbering used by the CM/ECF docketing system, rather than the document's original numbering.

[4] Plaintiff had filed a prior Title II claim alleging disability beginning on June 3, 2019, which was denied on December 10, 2020. Tr. 18. Regarding the current claim, at the oral hearing, Plaintiff's attorney confirmed that he was "formally amending [the onset date] to the date after the prior ALJ decision, which should be 12-11-2020[.]" Tr. 47. The ALJ decision mistakenly lists the prior decision date as December 7, 2020, and amended onset date as December 8, 2020, but this contradicts both the oral hearing testimony and the record. *Compare* Tr. 18, *with* Tr. 47 (oral hearing testimony), 68 (prior ALJ decision dated December 10, 2020). This minor discrepancy in the onset date does not affect the Court's analysis.

[5] As noted above, the actual alleged onset date is December 11, 2020. Tr. 47, 68.

However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)." Tr. 23.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of "light work"[6] with the following limitations:

> [T]he claimant can occasionally lift/carry twenty (20) pounds and frequently lift/carry ten (10) pounds. The claimant can stand and/or walk four (4) hours and sit six (6) hours of an eight (8) hour workday. The claimant can never climb ladders, ropes, or scaffolds, and can occasionally stoop, kneel, crouch, crawl, or climb ramps and stairs. The claimant can tolerate no more than occasional exposure to pulmonary irritants or hazards.

Tr. 24. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff could not perform his past relevant work as a mine machinery mechanic. Tr. 27. The ALJ further found that Plaintiff was a "younger individual age eighteen (18) to forty-nine (49)" on the alleged disability onset date, but subsequently changed category to closely approaching advanced age. Tr. 28. The ALJ noted that Plaintiff he has at least a high school education, and that transferability of job skills was immaterial to his disability determination because, under the Medical-Vocational Rules, a finding of not disabled was supported regardless of whether Plaintiff had transferable job skills. *Id.* Finally, the ALJ found that, considering Plaintiff's age, education, work

---

[6] "Light work" is defined as follows: "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [one] must have the ability to do substantially all of these activities. If someone can do light work, [the agency] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

3

experience, and RFC, and given the VE's testimony, there were a significant number of jobs in the national economy which Plaintiff could have performed, including the representative occupations of "cashier II," "small products assembler", and "electronics assembler". Tr. 28-29. The ALJ concluded that Plaintiff was not disabled at step five. Tr. 29.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981 (explaining that the ALJ's decision becomes the final decision when the Appeals Council denies a request for review). The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically

4

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

## A.     The Five-Step Framework

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521[7]). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory,

---

[7] Title XVI contains an identical regulation, codified at 20 C.F.R. § 416.921.

and other requirements of work." 20 C.F.R. §§ 404.1545(a)(1), (a)(4), 416.945(a)(1), (a)(4). In making an RFC determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "[the Court] review[s] the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a

7

whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff raises just one argument on appeal: that "the ALJ's RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion of treating source Mallori Gariner, FNP-C." *Brief* [#13] at 12. Specifically, he argues that the ALJ improperly discounted the opinions Nurse Gariner set out in her Physical Medical Source Statement, without properly considering supportability and consistency. *Id.* at 13-17.

The Social Security regulations state that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). However, the ALJ must "articulate how [he] considered the medical opinions" presented in the claim. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) Pursuant to 20 C.F.R. § 404.1520c(b)(2) and 20 C.F.R. § 416.920c(b)(2), supportability and consistency are the two most important factors for the ALJ to consider when determining the persuasiveness of medical opinions and prior administrative medical findings. "Regardless of any other factors considered, the ALJ <u>must</u> explain how he considered the two 'most important factors'—supportability and consistency." *Crystal R.E. v. Kijakazi*, Case No. 20-cv-00319-

SH, 2022 WL 446023, at *6 (N.D. Okla. Feb. 14, 2022) (quoting 20 C.F.R. § 404.1520c(b)(2)[8]) (emphasis in original); 20 C.F.R. § 416.920c(b)(2) (stating that the agency "*will* articulate how [it] considered the supportability and consistency factors for a medical source's medical opinions") (emphasis added). The ALJ may, but is not required to, explain how he considered factors such as the medical source's relationship with the claimant and the source's specialization. 20 C.F.R. § 416.920c(b)(2), (c)(3)-(4).

Here, the ALJ discussed Nurse Gariner's opinions at length, including her assessment that Plaintiff "was limited to a less than full range of sedentary work with the ability to take unscheduled breaks for a few minutes each once per hour and the use of an assistive device for ambulation." Tr. 26, 984-86. Nurse Gariner also recommended "limited overhead reaching and exposure to pulmonary irritants and noted the claimant would be off task at least twenty-five percent (25%) of the workday and absent approximately four (4) days per month." Tr. 26, 985-86. The ALJ found Nurse Gariner's significant restrictions unpersuasive based on a combination of lack of support and inconsistency with the record evidence. Tr. 26-27.

As for supportability, the ALJ found Nurse Gariner's ambulatory assistance opinion "not supported by the treatment evidence" because "the only time use of a cane ever appears in treatment records is on the date [Nurse] Gariner completes this form." Tr. 26-27. Moreover, "[Nurse] Gariner never documented any weakened hand grip" and "it appears that [her] opinion is based upon the claimant [sic] subjective reports for off-task and absenteeism as there's nothing in this record or any other record to support this." Tr. 27. The Court notes that in Nurse Gariner's Physical Medical Source Statement, she

---

[8] Title XVI contains an identical regulation, codified at 20 C.F.R. § 416.920c(b)(2).

acknowledges that her conclusion is based, in part, on "subjective report[s]". Tr. 985. The ALJ also found Nurse Gariner's opinions to be unpersuasive because they were "inconsistent with the other evidence of record, which shows the claimant is generally independent self-care and varied activities of daily living." Tr. 27 (citing Tr. 290-97, 46-56).

To be sure, the ALJ's explanation could have been much more detailed and precise. For example, there are relatively few citations in this section and most are to entire exhibits rather than specific sentences or excerpts. Tr. 26-27. The ALJ discusses "this opinion" and "these significant restrictions" in multiple places without specifically articulating whether the opinion refers to the weakened hand grip, shoulder limitations, both of those issues, or something else. Tr. 26-27. The Court does not find the depth of the ALJ's explanation "extensive" or that the quality of his analysis "exceeded that required by the governing regulations," as Defendant argues—it was barely sufficient to allow meaningful review. *Response* [#14] at 10.

The ALJ's discussion of Nurse Gariner's opinions touches on both supportability and consistency, the two mandatory factors. 20 C.F.R. § 416.920c(b)(2) (stating that the agency "*will* explain how [it] considered the supportability and consistency factors for a medical source's medical opinions") (emphasis added). The ALJ found that Nurse Gariner's limitation opinions lacked any clear support from either her notes or other records. *See* Tr. 26 (stating that Nurse Gariner's "significant restrictions are not supported by the treatment evidence"), 27 (noting that Nurse Gariner "never documented any weakened hand grip" and that the off-task and absenteeism opinions "appear . . . based upon [Plaintiff's] subjective reports" since "there's nothing in the record to support this").

10

The ALJ also found that the use of a cane and off-task and absenteeism opinions were inconsistent with the record. *See* Tr. 26-27 (noting that use of a cane appears only once in the records, on the date of Nurse Gariner's form, after multiple denials of a need for a cane) (citing Tr. 364, 757); (the off-task and absenteeism opinions are "inconsistent with the other evidence of record, which shows the claimant is generally independent self-care [sic] and varied activities of daily living") (citing Tr. 290-97, 46-56). The Court finds that the ALJ's stated supportability and consistency analyses plausibly support his conclusion that these opinions were unpersuasive.

Despite the lack of clarity in some places, the ALJ's explanation plainly considered the two factors he was required to discuss. To the extent Plaintiff points out that Nurse Gariner has been treating him since 2019, the ALJ need not explain how he considered those factors. the treater's relationship with the claimant does not fall under supportability or consistency—it is a separate, optional consideration. *Reply* [#15] at 3; 20 C.F.R. §§ 404.1520c(c)(3), (b)(2), 416.920c(c)(3), (b)(2) (listing "relationship with the claimant" as a factor which the ALJ "may, but [is] not required to explain how [it was] considered"). The Court finds no legal error in the ALJ's analysis of Nurse Gariner's opinions.

However, the Court agrees with Plaintiff that Nurse Gariner's opinion that Plaintiff should avoid pulmonary irritants is supported by objective record evidence. *See, e.g.*, *Brief* [#13] at 15 (arguing that records "revealed Spirometry and lung volumes demonstrated a mild obstructive defect, air trapping and moderate reduction in the diffusion capacity" of Plaintiff's lungs); *id.* (stating that "[Nurse] Gariner was concerned for Plaintiff's symptoms based on objective diagnostic testing" in the context of COPD); Tr. 986 (Nurse Gariner opining that "due to COPD, advised to avoid chemical inhalation, dust,

11

fires, and allergens"). To the extent the ALJ discounted Nurse Gariner's opinion that Plaintiff should avoid exposure to pulmonary irritants—and it is not clear whether he did—the Court agrees that was error because that decision was not supported by substantial evidence.[9] *See, e.g.*, *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.") (quoting Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992)). Nevertheless, the Court finds any such error harmless because the ALJ included a consistent limitation in his RFC assessment: "[Plaintiff] can tolerate no more than occasional exposure to pulmonary irritants or hazards." Tr. 24. Whether he drew this limitation from Nurse Gariner or from somewhere else in the record, it is consistent with Nurse Gariner's opinion that he should avoid pulmonary irritants. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1165 (10th Cir. 2012) (finding any error in weighing medical opinion harmless where that medical opinion's "only specific work-related limitation [was] not inconsistent with the ALJ's RFC"). There is no reversible error here.

Finally, Plaintiff argues that the ALJ's discussion of his daily activities contradicts some of his hearing testimony, and therefore does not provide a basis to discount Nurse Gariner's opinions. *Brief* [#13] at 16 (citing Tr. 25, 51-52). Defendant argues that the ALJ's discussion of Plaintiff's daily activities was supported by evidence in the record, and that Plaintiff's hearing testimony was inconsistent with his reports to medical providers, so the ALJ was merely resolving conflicting evidence. *Response* [#14] at 14 (citing Tr. 291-94,

---

[9] The ALJ's imprecise language in this section renders unclear whether he discounted this particular opinion, because it was lumped in with several other limitations and not discussed any further. Tr. 26 (describing Nurse Gariner's opinion as including "limited overhead reaching and exposure to pulmonary irritants" among other limitations, before vaguely stating that "these significant restrictions are not supported by treatment evidence"), 27 (no further discussion of COPD or pulmonary irritants).

384, 685, 689, 734, 736, 738, 740, 742). The Court agrees with Defendant—the ALJ was entitled to consider competing evidence of Plaintiff's daily activities and could reasonably conclude that Plaintiff's statements to medical providers were more reliable than his hearing testimony. *See, e.g.*, *AKC v. Kijakazi*, Case No. 23-1045-JWB, 2023 WL 7495942, at *5 (D. Kan. Nov. 13, 2023) ("It is the ALJ who is entitled to resolve conflicts, and this court is not to displace the ALJ's judgment when there are two fair yet conflicting interpretations.") (citing *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007); *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). The Court finds that the ALJ's consideration of Plaintiff's daily activities (which supported his determination that Nurse Gariner's opinions were unpersuasive) was based on substantial evidence.

Overall, Plaintiff fails to show that the ALJ's supportability and consistency analysis of Nurse Gariner's opinions was deficient—although it was a close question. Aside from a harmless error regarding Nurse Gariner's opined limitations on pulmonary irritants, Plaintiff fails to show that the ALJ *should have* found Nurse Gariner's opinions persuasive—at most, he shows that the ALJ *could have* found them persuasive. Under substantial evidence review, this is not enough to warrant remand. The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski*, 372 F.3d at 1200). Because this is the only argument Plaintiff raises on appeal, the Court finds that the ALJ's decision was based upon substantial evidence and is free of reversible legal error.

### IV. Conclusion

Based on the foregoing,

13

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 31, 2024

BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge